UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| ROBERTO OSORIO GONZALEZ,<br>    Petitioner,<br><br>    v.<br><br>DAVID T. WESLING, *Field Office Director of Enforcement and Removal Operations, Boston Field Office, Immigration and Customs Enforcement*; MARKWAYNE MULLIN, *Secretary, U.S. Department of Homeland Security*; U.S. DEPARTMENT OF HOMELAND SECURITY; TODD BLANCHE, *Acting U.S. Attorney General*; EXECUTIVE OFFICE OF IMMIGRATION REVIEW; MICHAEL NESSINGER, *Warden of Wyatt Detention Facility*; and JOSEPH B. EDLOW, *Director of U.S. Citizenship and Immigration Services*,<br>    Respondents. | No. 26-cv-231-JJM-AEM |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Chief Judge.

Pending before the Court is Roberto Osorio Gonzalez's Amended Complaint for Injunctive and Declaratory Relief and Amended Petition for Writ of Habeas Corpus. ECF No. 7. He claims that his arrest by Immigration and Customs Enforcement ("ICE") at his schedule biometrics appointment for his pending U-Visa application violates the Due Process Clause of the Fifth Amendment, as well as the Administrative Procedure Act ("APA"). *Id.* at 11-16. In its Response in Opposition,

the Government argues that this Court lacks jurisdiction to hear this case and that Mr. Gonzalez's claims are "deficient."  ECF No. 9 at 3-5.

The Court finds that it does have jurisdiction over Mr. Gonzalez's claims.  In addition, for the reasons stated below, the Court GRANTS Mr. Gonzalez's Amended Complaint and Petition and ORDERS the Government to immediately release him from ICE custody.

## I.   BACKGROUND

### A.   Statutory and Regulatory Framework

#### 1.   Detention Under Section 1231(a)

Starting with the basics, the Government's power to detain a noncitizen must be grounded in a specific provision of the Immigration and Nationality Act ("INA"). S*ee, e.g., Gonzalez Lopez v. Wesling*, No. 26-cv-047-JJM-AEM, --- F. Supp. 3d ----, 2026 WL 309607, at *1 (D.R.I. Feb. 5, 2026); *accord Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018).  As relevant here, Section 1231(a) of the INA authorizes the Department of Homeland Security ("DHS") to detain noncitizens who have been "ordered removed."  *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022) (quoting 8 U.S.C. § 1231(a)).  "After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day 'removal period.'"[1]  *Id.* (quoting 8 U.S.C. § 1231(a)(1)(A)).  The noncitizen is subject to

---

[1] The "removal period" begins on the latest of three dates: (1) "[t]he date the order of removal becomes administratively final," (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order," and (3) "if the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from

mandatory detention during the 90-day removal period.  *See* 8 U.S.C. § 1231(a)(2)(A) (providing that the noncitizen "shall" be detained "[d]uring the removal period").

Following the expiration of the removal period, the Government "may" detain only four categories of noncitizens: "(1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" *Arteaga-Martinez*, 596 U.S. at 578-79 (quoting 8 U.S.C. § 1231(a)(6)).

### 2.    Procedures Governing U Visas

In 2000, Congress created a pathway to legal status for noncitizen survivors of qualifying crimes who assist law enforcement in investigating or prosecuting those crimes.  *See* Victims of Trafficking and Violence Protection Act ("VTVPA"), Pub. L. No. 106-386, § 1513(a)(2)(A), (B), 114 Stat. 1464 (2000) (codified as amended at 8 U.S.C. § 1101(a)(15)(U)).  This law authorizes U.S. Citizenship and Immigration Services ("USCIS") to provide a qualifying noncitizen with a U-1 nonimmigrant visa ("U Visa").  *See Benitez v. Wilkinson*, 987 F.3d 46, 49 (1st Cir. 2021).

A noncitizen is eligible for a U Visa if the DHS Secretary determines that: (1) the applicant "suffered substantial physical or mental abuse as a result of having been a victim of" certain specified types of crimes; (2) the applicant "possesses information concerning [the] criminal activity"; (3) the applicant "has been helpful, is

---

detention or confinement." *Mavungo-Raymond v. Nessinger*, No. 26-cv-013-JJM-AEM, 2026 WL 161358, at *2 (quoting 8 U.S.C. § 1231(a)(1)(B)).

being helpful, or is likely to be helpful" to government officials regarding the "investigating or prosecuting [of the] criminal activity"; and (4) the crime "violated the laws of the United States or occurred in the United States." *See* 8 U.S.C. § 1101(a)(15)(U)(i)(I)-(IV).  Per regulation, the noncitizen must also file "a Petition for U Nonimmigrant Status on the form prescribed by USCIS"[2] and submit to the collection of biometric data (i.e., fingerprints, photographs, and signatures).  *See* 8 C.F.R. § 214.14(c)(1), (3).

Importantly, a noncitizen "who is the subject of a final order of removal, deportation or exclusion is not precluded" from eligibility for a U Visa.  8 C.F.R. § 214.14(c)(1)(ii).  While the filing of the U Visa does not necessarily entitle the noncitizen to remain in the United States, there are statutes and regulations that allow the noncitizen to file with DHS a request for an administrative stay of removal. *See* 8 U.S.C. § 1227(d); 8 C.F.R. §§ 241.6(a), 1241.6(a).  If granted, the stay of removal remains in effect while the U-Visa application is pending, and it guarantees that the applicant "shall not be removed" from the United States.  8 U.S.C. § 1227(d)(1), (3).

### B.    Factual and Procedural History

Mr. Gonzalez is a native of Guatemala who entered the United States without inspection nearly twenty-five years ago.  ECF No. 7 at 7.  On September 21, 2026, an immigration judge ("IJ") issued a final order of removal against Mr. Gonzalez *in*

---

[2] The form prescribed by USCIS is called a Form I-918.  It looks something like this.  *See* Dep't of Homeland Sec., USCIS Form I-918, Petition for U Nonimmigrant Status,       https://www.uscis.gov/sites/default/files/document/forms/i-918.pdf [https://perma.cc/XGU7-7Q5Y] (last visited June 18, 2026).

*absentia.*[3]    *Id.; see also* ECF No. 5-1 at 1 (displaying final order of removal). Nevertheless, Mr. Gonzalez remained in the country and spent the next twenty years living in New Bedford, Massachusetts.  ECF No. 7 at 3.  During that time, he has had six children born in the United States, and he has become a small business owner of a grocery store.  *Id.* at 7.

On January 23, 2014, while Mr. Gonzalez was working in his store, he was robbed at knifepoint.  *Id.; see also* ECF No. 7-1 at 18-22 (displaying Mr. Gonzalez's declaration).  After the armed robbery, Mr. Gonzalez immediately called the police and allowed them access to the store's surveillance footage.  ECF No. 7 at 7.

One week later, on January 30, 2014, Mr. Gonzalez was robbed a second time by the same individual, who pointed a machete at him and demanded money from the cash register.  *Id.* at 8.  Following the robbery, Mr. Gonzalez called the police again and retrieved video footage for the police officers.  *Id.*

About two weeks after that, on February 18, 2014, Mr. Gonzalez observed the same individual who robbed his store walk by, and he proceeded to follow him on foot. *Id.* Mr. Gonzalez called 911 and reported the individual's location.  ECF No. 7-1 at 28. Officers from the New Bedford Police Department arrived at the scene, apprehended the individual, and arrested him.  *Id.*

Because of Mr. Gonzalez's assistance with the investigation and prosecution of these crimes, the New Bedford Chief of Police, Jason Thody, completed a U-Visa

---

[3] The final order of removal was addressed to "Carlos Chach," *see* ECF No. 5-1, which Mr. Gonzalez concedes is an alias that he has used in the past.  *See* ECF No. 7 at 7.

certification on his behalf.[4]  *Id.*; *see also* ECF No. 7-1 at 13-17 (displaying U-Visa certification).  Chief Thody certified that Mr. Gonzalez "was threatened at knife point on two occasions" and "was the victim of armed robbery, twice" and that Mr. Gonzalez "was traumatized by these incidents" and "suffered psychological harm."  ECF No. 7-1 at 14.  Chief Thody also certified that Mr. Gonzalez "gave police video surveillance of both incidents of armed robbery" and "also identified his assailant and notified the police when he saw him weeks after the last incident of armed robbery."  *Id.* at 15. Mr. Gonzalez states that he also provided testimony in Massachusetts Superior Court, which "led to the successful prosecution of the individual responsible for at least two armed robberies."  ECF No. 7 at 8.

Mr. Gonzalez thereafter filed a petition for a U Visa on March 17, 2026.  *Id.* at 9; *see also* ECF No. 7-1 at 1-17 (displaying Petition for U Nonimmigrant Status). After receiving his application, USCIS instructed Mr. Gonzalez to go to a USCIS Application Support Center in Cranston, Rhode Island for a biometrics appointment. *Id.*; *see also* ECF No. 7-3 at 1 (displaying USCIS notice).  Mr. Gonzalez appeared for his appointment on April 21, 2026.  ECF No. 7 at 9. While he was seated and waiting to be called, ICE agents came into the office and arrested and detained Mr. Gonzalez. *Id.*  He could not complete his biometrics examination at this time.  *Id.*

---

[4] As part of the U-Visa process, a qualified government official must file a certification, stating that the noncitizen "has been helpful, is being helpful, or is likely to be helpful" in the investigation or prosecution of specified criminal activity.  *See* 8 U.S.C. § 1184(p)(1).

Since then, Mr. Gonzalez has been detained at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island. *Id.* In a declaration, ICE's Acting Assistant Field Office Director, Brian Sullivan, has communicated that "ICE is in possession of a valid travel document for [Mr. Gonzalez] and is ready to effect removal." ECF No. 6-1 at 5. As of April 30, 2026, Mr. Gonzalez has filed a stay of removal with DHS, which remains pending at this time. ECF No. 7 at 9.

Mr. Gonzalez filed his Amended Complaint and Petition on May 5, 2026. *Id.* The Government primarily argues that the Court lacks jurisdiction over Mr. Gonzalez's claims. ECF No. 9 at 3-4. In addition, according to the Government, Mr. Gonzalez's claims are "deficient" because his "biometrics have been processed" and his "U-visa will be processed whether or not he is in the United States." *Id.* at 4-5.

## II. DISCUSSION

### A. Jurisdiction

#### 1. Section 1252(b)(9) Does Not Apply

The Government first argues that 8 U.S.C. § 1252(b)(9) deprives the Court of jurisdiction to review Mr. Gonzalez's claims because they "all . . . pertain to a final order of removal." ECF No. 9 at 3. Section 1252(b)(9) makes it so that IJs and the Board of Immigration Appeals ("BIA") decide "all questions of law and fact . . . arising from" the removal process. 8 U.S.C. § 1252(b)(9). The First Circuit has explained that this "proviso was designed to consolidate and channel review of *all* legal and factual questions that arise from the removal of [a noncitizen] into the administrative process, with judicial review of those decisions vested exclusively in the courts of

appeals." *Aguilar v. U.S. Immigr. & Customs Enf't*, 510 F.3d 1, 9, 11 (1st Cir. 2007) (emphasis in original).  However, claims that are "independent of, or wholly collateral to, the removal process" do not "arise from" the removal process and can therefore be heard by the district courts.  *Id.* at 11; *see also Gicharu v. Carr*, 983 F.3d 13, 16 (1st Cir. 2020).

Indeed, the First Circuit has recognized that noncitizens may pursue challenges to the legality of their detention in district court because those challenges are independent of removal proceedings and, thus, not barred by Section 1252(b)(9). *See Aguilar*, 510 F.3d at 11 (citing *Hernández v. Gonzales*, 424 F.3d 42, 42 (1st Cir. 2005); *see also* 8 C.F.R. § 1003.19(d) ("Consideration by the [IJ] of an application or request of a respondent regarding custody or bond under this section shall be *separate* and *apart* from, and *shall form no part of*, any deportation or removal hearing or proceeding." (emphasis added)).  This provision is not implicated here where Mr. Gonzalez challenges the legality of his detention under the APA.  *See* ECF No. 7 at 13-16.

Section 1252(b)(9) also does not cover "claims that cannot effectively be handled through the available administrative process." *Aguilar*, 510 F.3d at 11.  This carve-out necessarily encompasses due process challenges to detention because the Immigration Court and the BIA lack any authority to adjudicate these sorts of constitutional challenges. *See Matter of Cruz de Ortiz*, 25 I&N Dec. 601, 605 (BIA 2011) ("[N]either we nor the [IJs] have authority to rule on the constitutionality of

8

the statutes we administer."). Here, then, Mr. Gonzalez's due process challenge to his detention is also not barred by Section 1252(b)(9). *See* ECF No. 7 at 11-13.

Accordingly, the Court finds that Section 1252(b)(9) does not deprive it of jurisdiction to review Mr. Gonzalez's claims.

### 2. Section 1252(g) Does Not Apply

The Government also seems to suggest that Mr. Gonzalez's claims are barred by 8 U.S.C. § 1252(g). ECF No. 9 at 3. Section 1252(g) provides, in relevant part: "[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). As the Supreme Court has explained, Section 1252(g) is a "discretion-protecting" provision of the INA that is designed to shield from judicial review exercises of prosecutorial discretion with respect to pending removal proceedings. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999).

But a challenge to the legality of one's detention is wholly separate from a challenge to removal proceedings. The First Circuit has recognized that Section 1252(g) "does not bar judicial review of . . . challenge[s] to the lawfulness of detention," particularly given that "assertions of illegal detention are plainly collateral to ICE's prosecutorial decision to execute [a noncitizen's] removal." *Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023). And, in a very similar case to this one, Judge Brian E. Murphy of the U.S. District Court for the District of Massachusetts observed that

9

Section 1252(g) does not bar APA challenges to the administration of U-Visa benefits, since these are the "types of benefits . . . 'courts are often called upon to protect.'" *Oliveira v. Edlow*, No. 25-13228-BEM, 2025 WL 3492110, at *8 (D. Mass. Dec. 18, 2021) (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 18 (2020)).

Ultimately, Mr. Gonzalez is not "attack[ing] the decision to execute [his] removal order." *Kong*, 62 F.4th at 612. He brings APA and constitutional claims arising from the process by which ICE detained him and, as with Section 1252(b)(9), those claims are not barred under Section 1252(g).

## B.     The Merits

### 1.     The Government Violated Mr. Gonzalez's Due Process Rights

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This right to liberty extends to all individuals in the United States, regardless of citizenship status. *Id.* at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."); *see also Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings.").

10

Mr. Gonzalez raises a procedural due process claim, alleging that ICE unconstitutionally detained him and prevented him from completing a necessary step in his U-Visa application process.  ECF No. 7 at 11-13.  According to Mr. Gonzalez, ICE's decision to arrest and detain him at his biometrics appointment "violates the Due Process Clause by depriving him of the opportunity to pursue [U-Visa] relief, to which the INA and its regulations entitle him, and because it subjects him to removal from the United States without 'th[e] due process required by the regulations.'"  *Id.* at 12 (quoting *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)).

As the Supreme Court has explained, "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  Once a petitioner has identified a property or liberty interest, a reviewing court "must determine whether constitutionally sufficient process has been provided."  *Portillo Vasquez v. Turek*, No. 2:25-cv-741, 2025 WL 2733631, at *5 (D. Vt. Sept. 25, 2025) (citing *Mathews*, 424 U.S. at 332-33).

This determination is made by applying the three-part balancing test set out in *Mathews*, which considers: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and

the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335; *see Portillo Vasquez*, 2025 WL 2733631, at \*5-7 (applying *Mathews* test to noncitizen's procedural due process challenge to ICE's decision to detain her while she attended her biometrics appointment for her T-Visa application[5]); *Gavarete Ramirez v. Nessinger*, No. 26-cv-259-MRD-AEM, slip op. at 3-5 (D.R.I. May 14, 2026) (same).  The Court analyzes each factor in turn.

### a.      Private Interest

As to the first *Mathews* factor, Mr. Gonzalez has a strong private interest in being able to pursue his U-Visa application.  The Government devotes almost little to no briefing on this issue but merely asserts in a footnote that "there are no cognizable property interests in government programs – like the immigration benefits at issue here – that the government has the discretion to award or deny or rescind."  ECF No. 9 at 4 n.2.  But Mr. Gonzalez is not alleging a deprivation of a *property* interest.  Unlike the beneficiary described in *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005), the principal case upon which the Government relies, the Government has not actually granted or denied Mr. Gonzalez the benefit that he seeks.  The other case upon which the Government relies, *Roe v. Lynch*, 997 F.3d 80, 85 (1st Cir. 2021)

---

[5] A T Visa, or T Nonimmigrant Status, is "a type of visa created by Congress for survivors of human trafficking."  *Portillo Vasquez*, 2025 WL 2733631, at \*1. Applicants must demonstrate: (1) "they are a victim of a severe form of trafficking"; (2) "they are physically present in the United States at the time . . . the application is filed"; (3) "that they have complied with reasonable requests for assistance from law enforcement in the investigation into the trafficking"; and (4) "they would suffer severe hardship if they were to be removed."  *Id.* (citing 8 C.F.R. § 214.202(a)-(d)). Like applicants for T Visas, "[a]pplicants who are subject to final orders [of] removal are welcome to apply for the T-Visa."  *Id.* (citing 8 C.F.R. § 214.204(b)(2)).

(holding that an individual did not have "a protected liberty or property interest in the prosecutor's charging decisions"), is similarly inapplicable because USCIS has not yet made any decision on Mr. Gonzalez's U-Visa application.

Instead, Mr. Gonzalez challenges the deprivation of his *liberty* interest. Specifically, Mr. Gonzalez asserts that he has a protected liberty interest in pursuing his U-Visa application without the Government interfering with his ability to do so. *See* ECF No. 7 at 10-11 (challenging the Government's "unlawful interference with his ability to apply for relief for which he is eligible as a victim of crime"); ECF No. 11 at 9.    To be sure, district courts across the country are split on whether this constitutes a cognizable liberty interest. *See Portillo Vasquez*, 2025 WL 2733631, at *5 (collecting cases).

Nevertheless, just as Judge Melissa R. DuBose of this Court found in a similar case, Mr. Gonzalez has the better of the argument: There is a cognizable liberty interest in noncitizens being free from undue interference while undertaking the agency-mandated processes of filing their immigration benefit applications. *See Gavarete Ramirez*, slip op. at 4 (holding the same for those noncitizens with pending T-Visa applications); *Portillo Vasquez*, 2025 WL 2733631, at *6 (same).

That Mr. Gonzalez seeks a discretionary form of relief is of no consequence here, given that he at least has the right to apply for that relief. *See* 8 C.F.R. § 214.14(c)(1)(ii) (providing that a noncitizen "who is the subject of a final order of removal, deportation or exclusion is not precluded" from eligibility for a U Visa). And, as the First Circuit has recognized, "[a] right to *seek* relief is analytically separate

13

and distinct from a right to the relief itself," and noncitizens are "not precluded from having a vested right in a form of relief merely because the relief itself is ultimately at the discretion of the Executive Branch." *Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) (emphasis added).

Simply put, individuals like Mr. Gonzalez "who avail[ ] themselves of a legal process offered by USCIS should be entitled to complete that process" without undue interference from the Government. *Gavarete Ramirez*, slip op. at 4; *see also Portillo Vasquez*, 2025 WL 2733631, at *6 ("The articulable liberty interest here is to be free from undue interference while undertaking the mandated process of filing a T-Visa application and receiving a bona fide determination."); *S.N.C. v. Sessions*, 325 F. Supp. 3d 401, 411 (S.D.N.Y. 2018) (finding that petitioner had made a "strong showing" that she was likely to succeed on the merits of her due process claim because "Petitioner has a right to make the [visa] applications and have them fully adjudicated without undue interference"). That did not happen here, however, because Mr. Gonzalez was detained by ICE as he was actively attempting to provide the biometric data that USCIS required of him to proceed with his U-Visa application. *See* 8 C.F.R. § 214.14(c)(3) ("All petitioners for [U Visas] must submit to biometric capture and pay a biometric capture fee.").

As such, the first *Mathews* prong weighs strongly in Mr. Gonzalez's favor, and the Court finds that he has a protected liberty interest in having his pending U-Visa application adjudicated without undue interference from the Government.

14

### b.    Risk of Erroneous Deprivation

The second *Mathews* factor, "the risk of an erroneous deprivation of such [private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[,]" also weighs in Mr. Gonzalez's favor. *Mathews*, 424 U.S. at 335.  At this stage in the *Mathews* calculus, the primary interest is that of the detained individual—not the Government.  *See Hamdi v. Rumsfeld*, 542 U.S. 507, 530 (2004) (citing *Carey v. Piphus*, 435 U.S. 247, 259, 266 (1978)).

ICE's arrest and detention of Mr. Gonzalez during his biometrics appointment frustrated his ability to submit the data that USCIS required of him as part of his U-Visa application.  *See* ECF No. 7 at 9 ("Because of ICE's arrest, [Mr. Gonzalez] was not able to complete the requisite biometrics examination.").  No harm, no foul, says the Government.  After contacting ICE's Office of the Principal Legal Advisor ("OPLA"), the Government avers that "ICE arranged to have [Mr. Gonzalez's] fingerprints rolled and mailed to USCIS and that that completes collection of information necessary for consideration of [his] U-Visa to proceed forward with USCIS."  ECF No. 9 at 4.

The Court finds the Government's representations hard to believe and unsupported.  As Mr. Gonzalez points out, just six months ago, USCIS itself put out a policy alert "to clarify that there is no controlling intradepartmental agreement between USCIS and ICE regarding the collection of biometrics for aliens in custody with pending USCIS benefits."  ECF No. 7 at 7 (citing Policy Alert PA-2025-28 from

15

USCIS, Biometrics Collection for Aliens in Custody 2 (Dec. 5, 2025), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20251205-BiometricsCollection.pdf [https://perma.cc/T9BT-6LV3] [hereinafter Biometrics Policy Alert]). Indeed, this policy "remove[d] outdated guidance that place[d] the burden on ICE to collect biometrics of aliens in custody," and it flatly stated that, going forward, "USCIS does not collect biometrics from aliens or other persons who are detained or incarcerated in any jail, prison, or similar DHS or non-DHS detention facilities and have a pending immigration petition or application with USCIS." Biometrics Policy Alert, at 1-2.[6]

Notably, the Supreme Court has explained that "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). This general rule finds its origins in the *Accardi* doctrine, which teaches that agencies are not free to simply disregard their own internal policies. *See Accardi*, 347 U.S. at 268; *see also Church of Scientology of Cal. v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990) ("Pursuant to the *Accardi* doctrine, an administrative agency is required to adhere to its own internal operating procedures."); *Montilla v. I.N.S.*, 926 F.2d 162, 166 (2d Cir. 1991) ("The seeds of the *Accardi* doctrine are found in the long-settled principle that rules

---

[6] The policy makes an exception, stating that DHS *will* collect biometrics from noncitizens *if* "they are in removal proceedings and have an application or petition in front of the Executive Office for Immigration Review [EOIR]." Biometrics Policy Alert, at 2. However, this exception does not apply to Mr. Gonzalez, given that his application for a U Visa is before USCIS, not EOIR. Unlike USCIS, which is housed under DHS, EOIR is a completely separate federal agency housed under the Department of Justice.

promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency.").

The Government does not even attempt to explain this apparent departure from agency policy. What is more, the Court views the Government's representations "with a healthy dose of skepticism" where "[a]bsent from the record is any sort of a declaration from any of the Respondents in which they assure the Court that they will continue to process the application before effectuating [Mr. Gonzalez's] removal." *Gavarete Ramirez*, slip op. at 4. As such, the Court will assign more weight to the Government's own printed policies—namely, that it refuses to collect biometrics from detained noncitizens with pending USCIS benefit requests—than it will to the Government's uncorroborated and unsupported assertion that "[Mr. Gonzalez's] biometrics have been processed."

The Court is similarly skeptical of the Government's argument that Mr. Gonzalez's removal from the United States is justified on the grounds that "if [his] U-Visa is authorized by USCIS, [Mr. Gonzalez] would receive notice abroad and would be eligible to return to the United States under that visa." ECF No. 9 at 5. That comes as cold comfort to Mr. Gonzalez. Courts have long recognized that deportation is a "drastic measure" carrying with it "harsh consequences." *Padilla v. Kentucky*, 559 U.S. 356, 360 (2010) (citing *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10, (1948)). Even if USCIS eventually approved Mr. Gonzalez's U-Visa application from abroad, there is no guarantee that he would be allowed back into the country. Once removed from the United States, noncitizens are generally rendered inadmissible. *See* 8

17

U.S.C. § 1182(a)(9).  Noncitizens with approved U Visas can be granted waivers of inadmissibility, but this is ultimately a decision that is within the "discretion" of the Government and only "if the Secretary of Homeland Security considers it to be in the public or national interest do so."  8 U.S.C. § 1182(d)(14).

In sum, the risk of the Government erroneously depriving Mr. Gonzalez of his protected liberty interest in pursuing his U-Visa application is substantial.  The second *Mathews* factor therefore also weighs in his favor.

### c.     Burden on the Government

The final *Mathews* factor considers the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  *See Mathews*, 424 U.S. at 335.  Like the *Portillo Vasquez* court, this Court finds that granting Mr. Gonzalez's requested relief—releasing him so that he can continue pursuing legal status through a U Visa—"would preclude any erroneous deprivation of her liberty interests at a minimal cost to the [G]overnment."  2025 WL 2733631, at *6; *see also Gavarete Ramirez*, slip op. at 4-5.

The Court recognizes that "[t]he prompt execution of removal orders is a legitimate governmental interest, which detention may facilitate."  *Hernandez-Lara v. Lyons*, 10 F.4th 19, 32 (1st Cir. 2021) (citing *Nken v. Holder*, 556 U.S. 418, 436 (2009); *Aguilar*, 510 F.3d at 22).  As mentioned, Mr. Gonzalez has an order of removal that was entered against him *in absentia* nearly twenty years ago.  *See* ECF No. 7 at 7; ECF No. 5-1 at 1.

18

At the same time, there is another governmental interest in "facilitat[ing] the reporting of crimes to law enforcement officials by trafficked, exploited, and abused [noncitizens] who are not in lawful immigration status," and the U-Visa process encourages noncitizens to cooperate with law enforcement by offering them "a means to regularize [their] status." VTVPA § 1513(a)(2)(A), (B), 114 Stat. 1464. In addition, the First Circuit has recognized a "public interest"—which is relevant to considerations of the Government's interest—in avoiding "expending substantial resources on needless detention," particularly for those noncitizens who are neither "dangerous" nor "a flight risk." *Id.* at 33.

Here then, the Government's interest in removing Mr. Gonzalez is greatly outweighed by: (1) the interest in encouraging noncitizens, like Mr. Gonzalez, to come forward to help the police solve crimes; and (2) the interest in avoiding "needless detention" for those noncitizens who, like Mr. Gonzalez, have not been shown to pose a danger to the community or a flight risk.

The third *Mathews* factor weighs in Mr. Gonzalez's favor as well.

\* \* \*

The Court therefore finds that all three *Mathews* factors counsel in favor of granting Mr. Gonzalez's habeas petition to allow him to proceed with the U-Visa application process. Ultimately, "this is what due process demands. Immigration authorities have created a process by which noncitizens and immigrants can apply for lawful status. When the requirements of that procedure are used to prevent the

19

person from accessing and applying for that relief, there is a chilling effect on due process." *Portillo Vasquez*, 2025 WL 2733631, at *7.

Accordingly, Mr. Gonzalez's Amended Petition is GRANTED.[7]  ECF No. 7.

## C.    Remedy

Having concluded that Mr. Gonzalez has successfully established a due process violation, the Court next considers what relief he is due.  In this area, courts have a fair degree of flexibility.  *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands."); *see also Siraj v. U.S. Sent'g Comm'n*, No. 19-cv-03375 (ABJ), 2021 WL 1061701, at *6 (D.D.C. Mar. 18, 2021) ("Federal courts have the power and discretion under federal habeas to fashion a wide-range of appropriate relief.") (citing *Peyton v. Rowe*, 391 U.S. 54, 66-67 (1968)).  After all, habeas corpus is an "adaptable remedy," the "precise application and scope" of which changes "depending upon the circumstances." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008).

First, Mr. Gonzalez is entitled to immediate release from ICE custody.  *See Portillo Vasquez*, 2025 WL 2733631, at *7 (ordering same relief); *Gavarete Ramirez*, slip op. at 5 (same).  The Court is unwilling to reward ICE's behavior of arresting

---

[7] The Court need not decide Mr. Gonzalez's APA claim because the due process claim resolves the issues in this case.

20

noncitizens whose only mistake was showing up for their required appointments with USCIS.[8]

Mr. Gonzalez also contends that he is a member of the class (i.e., the "ICWC Class") recently certified by Judge André Birotte Jr. of the U.S. District Court for the Central District of California, and he seeks enforcement of his rights as a member of that class.  ECF No. 11 at 6-7; *see Immigr. Ctr. for Women & Children v. Noem* ("*ICWC*"), No. 2:25-cv-09848-AB-AS, --- F.R.D. ----, 2026 WL 1455004 (C.D. Cal. May 20, 2026).  This class is composed of:

1. **Pending Petition Class**: All individuals with pending principal or derivative U visa petitions, T visa petitions, or VAWA self-petitions who ICE detains or seeks to detain for civil immigration enforcement.

2. **Deferred Action Class**: All individuals to whom USCIS has granted deferred action based on a pending U or T visa petition and who, during the authorized period of deferred action, ICE detains, seeks to detain, or removed without providing notice and an opportunity to be heard regarding potential revocation of their deferred action status.

3. **Stay of Removal Class**: All individuals with a pending U or T visa petition who, since January 30, 2025, have been, are, or will be detained by ICE and who request or requested a stay of a final removal order prior to enforcement of that removal order.

*ICWC*, 2026 WL 1455004, at *46-47.  In the *ICWC* case, Judge Birotte issued a preliminary injunction, staying DHS's 2025 Guidance[9] that rescinded its earlier

---

[8] This practice has become increasingly common over the last year and a half. *See* Ariana Baio, *ICE Agents Are Arresting Migrants Showing Up for Their Immigration Hearings and Readying Them for Deportation*, The Indep. (Feb. 18, 2025, 19:52 GMT), https://www.independent.co.uk/news/world/americas/ice-arrest-immigration-hearings-court-b2700382.html.

[9] *See* U.S. Immigr. & Customs Enf't, Policy No. 11005.4, Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries

policy[10] that required ICE to refrain from pursuing removal against individuals with pending U-Visa applications. *Id.* at 36 (recognizing that "[b]y allowing ICE agents to turn a blind eye to persons with pending [U Visa] petitions, the 2025 Guidance undermines the legislative scheme Congress designed to protect such individuals from removal"). Judge Birotte explained that the stay of DHS's 2025 Guidance applies "nationwide" and reaches all class members, "without a geographical limitation." *Id.* at 46.

Mr. Gonzalez asserts that he is a member of the Pending Petition Class and the Stay of Removal Class because: (1) he is an individual with a pending principal U-Visa petition who ICE has detained; and (2) he is an individual with a pending U-Visa petition who, since January 30, 2025, has been detained by ICE and has requested a stay of a final removal order prior to enforcement of that removal order. ECF No. 11 at 7-8. Mr. Gonzalez clearly belongs to both classes. As such, consistent with Judge Birotte's ruling, the Government may not act under the 2025 Guidance in re-detaining Mr. Gonzalez while the Guidance remains stayed. *See ICWC*, 2026 WL 1455004, at 47 ("Pursuant to 5 U.S.C. § 705, the Court hereby **STAYS** the 2025 Guidance, including its rescission of prior policies. This stay applies in favor of All

---

of Victim-Based Immigration Benefits (Jan. 30, 2025), https://www.ice.gov/doclib/foia/policy/11005.4.pdf [https://perma.cc/2MG7-22RU].

[10] *See* U.S. Immigr. & Customs Enf't, ICE Directive 11005.3, Using a Victim-Centered Approach with Noncitizen Crime Victims (Dec. 2, 2021), https://www.ice.gov/doclib/foia/policy/11005.3_UsingVictimCenteredApproachNoncit izenVictims.pdf [https://perma.cc/TE6H-GVRT].

Individual Plaintiffs, the current and future clients of the Organizational Plaintiffs, and the members of all three Classes." (emphasis in original)).

Finally, the Court prohibits the Government from interfering with Mr. Gonzalez's ability to pursue his pending U-Visa application and will require that the Government continue processing his application in the normal course. *See Gavarete Ramirez*, slip op. at 5 (ordering similar relief).

## III.    CONCLUSION

For the reasons stated above, the Court GRANTS Mr. Gonzalez's Amended Complaint for Injunctive and Declaratory Relief and Amended Petition for Writ of Habeas Corpus.  ECF No. 1.  The Court ORDERS as follows:

1. The Government shall **release Roberto Osorio Gonzalez immediately**.

2. Pursuant to the *ICWC* class action, the Government shall not act under the 2025 Guidance in re-detaining Mr. Gonzalez while the Guidance remains stayed.

3. The Government shall not interfere with Mr. Gonzalez's ability to pursue his pending U-Visa application, and his application shall be processed in the normal course.

4. The Government shall **file a notice of compliance** with this Order within twenty-four (24) hours of Mr. Gonzalez's release.

IT IS SO ORDERED.


*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court


June 19, 2026

24